**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A. NEUMANN & ASSOCIATES, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NRC REALTY & CAPITAL ADVISORS, LLC, <br><br> Defendant. | Civil Action No. 24-5754 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant NRC Realty & Capital Advisors, LLC's ("Defendant") Motion to Dismiss Plaintiffs A. Neumann & Associates, LLC ("Neumann") and ANA Commercial Real Estate Tristate, LLC's ("ANA," and together with Neumann, "Plaintiffs") Complaint. (ECF No. 8.) Plaintiffs opposed (ECF No. 10), and Defendant replied (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Court grants Defendant's Motion.

**I.      BACKGROUND[1]**

On September 12, 2016, Neumann entered into an Engagement Agreement ("Engagement Agreement"), which granted Neumann the exclusive right and power to sell the business and assets

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

of Rudy & Sons, Inc., including, but not limited to, a Fuel Distribution Agreement. (Compl. ¶ 6, ECF No. 1.) That same day, ANA contracted ("Brokerage Agreement," and together with the Engagement Agreement, the "Agreements") to serve as the exclusive real estate agent for the seller, Rudy & Sons, Inc. and its affiliated companies to procure purchasers of certain real properties, which consisted of five[2] gas stations and car washes, which were located throughout Pennsylvania: three in Allentown; one in Easton; and one in Bethlehem (collectively, the "Properties"). (*Id.* ¶ 7.)

Plaintiffs maintain that the Agreements contain provisions that provide for Plaintiffs to receive commissions for any buyer introduced to Rudy & Sons, Inc. and its affiliates, who eventually purchase either the Fuel Distribution Agreement or the Properties. (*Id.* ¶¶ 8-10.) More specifically, Plaintiffs allege that the Engagement Agreement contains a provision that provides for commissions three years after its termination, and the Brokerage Agreement contains a similar provision that allows for commissions six years after its termination. (*Id.*)

On September 29, 2016, Gill Energy and Ravi Gill entered into a Standard Buyer's Confidentiality and Warranty Agreement with Plaintiffs ("Confidentiality Agreement"). (*Id.* ¶ 11.) Prior to executing the Confidentiality Agreement, Plaintiffs provided Gill Energy with the Blind Business Profile, which indicates that the real estate is being offered for sale by Plaintiffs. (*Id.* ¶¶ 13-14.) Upon execution of the Confidentiality Agreement, Plaintiffs provided Gill Energy with a confidential memorandum discussing the Properties. (*Id.* ¶¶ 15-16.)

The following year, on February 16, 2017, Plaintiffs notified Gill Energy via e-mail message that a representative of the seller was seeking to set up an in-person meeting. (*Id.* ¶ 17.)

---

[2] Plaintiffs allege that there were six gas stations and car washes but only listed five in their Complaint. (*See* Compl. ¶ 7.)

2

On April 11, 2017, Plaintiffs' representative had an in-person meeting with the Gill Energy representative, at which they expressed interest in purchasing the Fuel Distribution Agreement and the Properties. (*Id.* ¶ 19.) Months later, in May 2017, according to Plaintiffs, the seller, Rudy & Sons, Inc., breached the Brokerage Agreement by terminating the Agreements. (*Id.* ¶ 20.)

On September 20, 2017, Defendant contracted with the seller, Rudy & Sons, Inc., to serve as its real estate agent to procure purchasers for the Fuel Distribution Agreement and the Properties ("Defendant's Agreement") for which Plaintiffs had been contracted to serve as the exclusive agents. (*Id.* ¶ 21.) According to Plaintiffs, prior to entering into Defendant's Agreement, Defendant was aware that Gill Energy had been introduced to the seller of the Fuel Distribution Agreement and the Properties by Plaintiffs.[3] (*Id.* ¶¶ 22-23.) In May 2018, Gill Energy created the company Petro Realty PA, LLC, which purchased the Properties, and created a separate company to take title to the Fuel Distribution Agreement. (*Id.* ¶ 24.) In the end, Plaintiffs claim that, since they introduced Gill Energy and its affiliates to the seller, and in accordance with the express terms of the Agreements, they were entitled to a commission upon the sale of the Fuel Distribution Agreement and the Properties in May 2018. (*Id.* ¶ 25.) Even after the closing of title on the Fuel Distribution Agreement and the Properties had occurred, Plaintiffs maintain that Defendant had not informed them of the closing, so Plaintiffs would not receive their commissions from the sale. (*Id.* ¶ 26.)

---

[3] Plaintiffs allege that Defendant was aware based on an e-mail correspondence that Ian Walker of Defendant sent to Rudy Marmelo of Rudy & Sons, Inc., which requested a list of protected prospects. (*See* Compl. ¶ 22.) "'Protected prospects' refers to third-party entities with whom Rudy Marmelo had already been in contact with, prior to entering the September 20, 2017 Exclusivity Agreement with [Defendant], regarding the sale of the business and assets of Rudy & Sons, Inc." (Pls.' Opp'n Br. 4-5, ECF No. 10.)

Against that backdrop, Plaintiffs sued Defendant for tortious interference with a contract and prospective economic advantage. (Compl. ¶¶ 31-36.) The instant Motion ensued, in which Defendant asserts that the Court lacks personal jurisdiction over it under Federal Rule of Civil Procedure[4] 12(b)(2) and that Plaintiffs fail to state actionable claims under Rule 12(b)(6). (*See generally* Def.'s Moving Br., ECF No. 8-2.) Plaintiffs opposed, asserting that they adequately alleged personal jurisdiction over Defendant, and that the Court should alternatively order jurisdictional discovery. (*See generally* Pls.' Opp'n Br., ECF No. 10.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 n.9 (1984)).

---

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler*, 571 U.S. at 137). Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *See Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

B.   **Rule 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court

must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.  **DISCUSSION**

The Court begins by assessing whether it has personal jurisdiction over Defendant. *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case." (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999)). Neither party argues that the Court may exercise general jurisdiction over Defendant, so the Court focuses exclusively on whether it has specific jurisdiction.[5]

---

[5] Plaintiffs, however, briefly refer to general personal jurisdiction in their opposition. (*See* Pls.' Opp'n Br. 7.) In doing so, Plaintiffs contend that since "[i]t is unknown at this point what contacts Defendant [] has with New Jersey outside of the transaction at issue in the present matter . . . [,] [they] are entitled to expedited jurisdictional discovery." (*Id.*)

6

### A. The Court Lacks Personal Jurisdiction over Defendant.

In cases of intentional torts like tortious inference, the court may exercise personal jurisdiction when the so-called "*Calder* effects test" is satisfied, which stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 788 (1984). *See Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 500 (D.N.J. 2017). That test requires a plaintiff to allege:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . .

*Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). The Supreme Court has clarified that for the second and third prongs of the *Calder* effects test, the inquiry must focus on "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Further, to meet the *Calder* test's third prong, it is not sufficient that a plaintiff merely "establish that defendant knew that plaintiff was located in a particular forum." *Cabot Corp. v. Niotan, Inc.*, No. 08-1691, 2011 WL 4625269, at *14 (E.D. Pa. Sept. 30, 2011). The plaintiff must additionally "point to a specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266; *see also Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-694, 2019 WL 2067551, at *6 (D.N.J. May 10, 2019). With the proper standards in place, the Court turns to Plaintiffs' tortious interference claims.

Here, the Court finds that Plaintiffs fail to satisfy the burden of establishing the Court's jurisdiction over Defendant. In essence, Plaintiffs allege that Defendant intentionally interfered with a valid contract as well as prospective economic advantage, preventing Plaintiffs from

receiving their commissions from the Agreements. (Compl. ¶ 26.) Taking the facts alleged in the Complaint as true, this Court assumes solely for the purposes of this analysis that Defendant committed the intentional tort of tortious interference.[6] In assessing whether a defendant "expressly aimed his tortious conduct at [New Jersey]," the Third Circuit has held that "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement. [Instead, t]he defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied." *IMO Indus. Inc.*, 155 F.3d at 263, 265 (internal quotations marks omitted) ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*.").

Yet, that is precisely what Plaintiffs do here. Plaintiffs first maintain that "both Plaintiffs are New Jersey corporations." (Pls.' Opp'n Br. 9.) Simply put, "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007); *see also Aardvark Event Logistics, Inc. v. Bobcar Media LLC*, No. 16-5873, 2017 WL 59059, at *7 (E.D. Pa. Jan. 5, 2017) (citing *Marten*, 499 F.3d at 297) ("The effects test prevents a defendant who [did not] expressly aim its conduct at the forum state from being haled into a jurisdiction solely because it intentionally caused harm that was felt in the forum

---

[6] "To establish [tortious interference with an existing contract], a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *Fid. Eatontown, LLC v. Excellency Enter., LLC*, No. 16-3899, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017) (alteration in original) (citation omitted); *see also Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003) ("Tortious interference with contractual relations and tortious interference with prospective economic advantages . . . are identical except that the tortious interference with contractual relations claim requires proof of an existing contract."). For the purposes of assessing specific jurisdiction, however, the Court does not reach the merits of this issue.

state."). Plaintiffs next maintain that Defendant aimed tortious conduct into New Jersey because the Agreements "Defendant interfered with were based in New Jersey and specifically subject to New Jersey law." (Pls.' Opp'n Br. 9.) But a choice of law provision alone, or taken together with knowledge of a plaintiff's residence, is insufficient to establish specific personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (holding that choice of law provision is not determinative of whether the court can exercise personal jurisdiction over a foreign defendant); *see also Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 644-45 (E.D. Pa. 2014) (finding defendant's knowledge that plaintiff was located in a state, and that the forum selection clause in the contract between plaintiff and defendant was also listed for that same state, was insufficient to show that defendants expressly aimed their tortious conduct at that state). The Court, therefore, finds that Plaintiffs fail to demonstrate Defendant's minimum contacts with New Jersey under the *Calder* test to exercise specific personal jurisdiction over Defendant.

### B. The Court Declines to Order Jurisdictional Discovery.

In the alternative, Plaintiffs request that this Court order jurisdictional discovery so that Plaintiffs may supplement their jurisdictional allegations. (*See* Pls.' Opp'n Br. 7.) Without more, the Court also declines to grant Plaintiffs' request for jurisdictional discovery to assert jurisdiction over Defendant. Such discovery is appropriate only if a plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n* , 960 F.2d at 1223); *see also Cosa Marble, Inc. v. Classic Tile, Inc.*, No. 07-587, 2008 WL 320465, at *3 (D.N.J. Jan. 28, 2008) (finding jurisdictional discovery warranted when a plaintiff has provided "at least some evidence" that a defendant "has had some contact" with the forum state). Plaintiffs do not plead any facts of reasonable particularity relevant to Defendant's contacts with New Jersey other than Defendant's

purported knowledge that Plaintiffs reside in the state. (Pl.'s Opp'n Br. 10.) There are no jurisdictional facts in dispute, and Plaintiffs fail to meet the requisite showing for jurisdictional discovery. *See Knierim v. Siemens Corp.*, No. 06-4935, 2008 WL 906244, at *8-11 (D.N.J. Mar. 31, 2008) (denying plaintiffs' request for jurisdictional discovery because plaintiffs could not establish a *prima facie* showing of personal jurisdiction, including under the *Calder* test.) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). The Court, however, grants Plaintiffs an opportunity to amend their Complaint to make the requisite showing that this Court should grant jurisdictional discovery or that this Court has personal jurisdiction over Defendant.

### C. The Court Lacks Personal Jurisdiction to Hear Defendant's Motion to Dismiss for Failure to State a Claim.

Because the Court holds that it lacks personal jurisdiction over Defendant, it cannot entertain Defendant's Motion to Dismiss under Rule 12(b)(6). *See Lightfoot*, 580 U.S. at 96.

### IV. <u>CONCLUSION</u>

The Court lacks personal jurisdiction over Defendant and declines to order jurisdictional discovery. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE
