**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| A. NEUMANN & ASSOCIATES, LLC, *et al.*,<br><br>                          Plaintiffs,<br><br>          v.<br><br>NRC REALTY & CAPITAL ADVISORS, LLC,<br><br>                          Defendant. | Civil Action No. 24-5754 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant NRC Realty & Capital Advisors, LLC's ("Defendant") Motion to Dismiss Plaintiffs A. Neumann & Associates, LLC ("Neumann") and ANA Commercial Real Estate Tristate, LLC's ("ANA," and collectively with Neumann, "Plaintiffs") First Amended Complaint ("FAC"). (ECF No. 17.) Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 19), and Defendant replied (Def.'s Reply Br., ECF No. 22). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion is granted.

## I.    BACKGROUND[1]

### A.    Factual Background

On September 12, 2016, Neumann entered into an Engagement Agreement ("Engagement Agreement"), which conferred upon Neumann the exclusive right and power to sell the business and assets of Rudy & Sons, Inc. ("Rudy"), including but not limited to a Fuel Distribution Agreement. (FAC ¶ 11, ECF No. 15.) That same day, ANA contracted to serve as the exclusive real estate agent for the seller, Rudy, and its affiliated companies, (the "Brokerage Agreement," and together with the Engagement Agreement, the "Agreements") to procure purchasers of five gas stations or car washes operating in Pennsylvania (the "Properties").[2] (*Id.* ¶ 12.) Plaintiffs assert that the Agreements provide for Plaintiffs to receive commission for any buyer introduced to Rudy and its affiliates that later purchase either the Fuel Distribution Agreement or the Properties. (*Id.* ¶¶ 13-15.) The Engagement Agreement and the Brokerage Agreement each contain a provision providing for Plaintiffs to receive commission three and six years, respectively, after each Agreement terminates. (*Id.*)

On September 29, 2016, Gill Energy—a prospective buyer of the properties—and Ravi Gill—Gill Energy's principal—entered into a Standard Buyer's Confidentiality and Warranty Agreement (the "Confidentiality Agreement") with Plaintiffs. (*Id.* ¶¶ 16-18.) Prior to executing the Confidentiality Agreement, Plaintiffs provided Gill Energy with the Blind Business Profile, which specifically indicated that Plaintiffs offered the real estate for sale. (*Id.* ¶¶ 19-20.) Upon execution

---

[1] The Court accepts the factual allegations in the FAC as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

[2] The FAC alleges there were six gas stations or car washes yet lists only five. (FAC ¶ 12.) These consisted of three properties in Allentown, Pennsylvania, one in Bethlehem, Pennsylvania, and one in Easton, Pennsylvania. (*Id.*)

of the Confidentiality Agreement, Plaintiffs provided Gill Energy with a Confidential Memorandum discussing the Properties. (*Id.* ¶¶ 21-22.)

That following February, Plaintiffs notified a representative of Rudy, by e-mail message, that Gill Energy would like to have an in-person meeting. (*Id.* ¶¶ 23-24.) On April 11, 2017, representatives for Plaintiffs and Gill Energy held a luncheon, at which time they expressed interest in purchasing the Fuel Distribution Agreement and the Properties. (*Id.* ¶ 25.) Shortly thereafter, in May 2017, Rudy breached the Brokerage Agreement by terminating the Agreements. (*Id.* ¶ 26.)

Then, on September 20, 2017, Defendant contracted with Rudy to serve as its real estate agent to procure purchasers for the Fuel Distribution Agreement and the Properties ("Defendant's Agreement"). (*Id.* ¶ 27.) Plaintiffs aver that prior to entering into the Defendant's Agreement, Defendant was aware Plaintiffs introduced Gill Energy to Rudy. (*Id.* ¶¶ 27, 29.)[3] Plaintiffs further allege that Rudy sent Defendant an e-mail message seeking either to pay a reduced commission or none if Gill Energy or its affiliates purchased the Fuel Distribution Agreement or the Properties. (*Id.* ¶ 28.)

On May 2, 2018, Gill Energy created the company, Petro Realty PA, LLC, which thereafter purchased the Properties, and created a separate company to take title to the Fuel Distribution Agreement. (*Id.* ¶ 30.) Plaintiffs claim that because they introduced Gill Energy and its affiliates to the seller, pursuant to the express terms of the Agreements, they were entitled to a commission upon the sale of the Fuel Distribution Agreement and the Properties in May 2018. (*Id.* ¶ 31.) Even after the closing of title on the Fuel Distribution Agreement and the Properties, Plaintiffs maintain

---

[3] Plaintiffs contend that Defendant was aware based on an e-mail message which Ian Walker of Defendant sent to Rudy's principal, requesting a list of protected prospects, that happened to include Gill Energy. (*See* FAC ¶ 29; Plfs.' Opp'n Br. 4-5, ECF No. 19.) Plaintiffs clarify that "protected prospects" refers to the third-party entities with whom Rudy had already been in contact prior to its execution of the Exclusivity Agreement. (Plfs.' Opp'n Br. 4-5.)

that Defendant had not informed them of the closing, so Plaintiffs would not receive their commissions from the sale. (*Id.* ¶ 32.)

B.    **Procedural History**

Plaintiffs filed the present action on April 30, 2024, asserting causes of action against Defendant for tortious interference with a contract and prospective economic advantage. (Compl. ¶¶ 31-36, ECF No. 1.) Defendant filed its first Motion to Dismiss (the "First Motion to Dismiss") for lack of personal jurisdiction under Federal Rule of Civil Procedure[4] 12(b)(2), and for failure to state actionable claims under Rule 12(b)(6). (*See generally* Def.'s First Motion to Dismiss, ECF No. 8.) Plaintiffs opposed (ECF No. 10), and Defendant replied (ECF No. 11). In a Memorandum Opinion, this Court concluded that dismissal without prejudice was warranted for lack of personal jurisdiction, denied Plaintiffs' request for jurisdictional discovery, and permitted Plaintiffs to amend the Complaint to cure its jurisdictional deficiencies. *See generally A. Neumann & Assocs., LLC v. NRC Realty & Cap. Advisors, LLC*, No. 24-5754, 2024 WL 4894769 (D.N.J. Nov. 26, 2024), ECF No. 13.

Plaintiffs filed their FAC on December 23, 2024. (*See* FAC.) Plaintiffs' amendments allege that: (1) Defendant is actively engaged in business in the state of New Jersey; (2) Defendant's website advertises seventy-three properties that are for sale or have been sold in New Jersey; and (3) Defendant's website provides brokerage information for the sale of convenience stores in New Jersey. (*Id.* ¶¶ 7-10.) Otherwise, the factual allegations between the FAC and the Complaint remain the same. (*Compare id. with* Compl.) Defendant filed a second Motion to Dismiss (the "Second Motion to Dismiss") for lack of personal jurisdiction under Rule 12(b)(2), and for failure to state

---

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

actionable claims under Rule 12(b)(6).[5] (Def.'s Second Motion to Dismiss, ECF No. 17.) Plaintiffs opposed, asserting that they adequately alleged both general and specific personal jurisdiction or, alternatively, that the Court should order jurisdictional discovery. (*See generally* Pls.' Opp'n Br.) Defendant filed a reply. (Def.'s Reply Br.)

## II.    **LEGAL STANDARD**

Pursuant to Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "[P]arties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

---

[5] Defendant also moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that the FAC inadequately pled diversity of citizenship on its face (Def.'s Moving Br. at 9-10), prompting this Court to (1) issue an Order to Show Cause as to why this Court has diversity of citizenship under 28 U.S.C. § 1332(a)(1); and (2) terminate Defendant's Motion in the interim. (*See* Order to Show Cause, ECF No. 24.) The parties thereafter entered submission on the docket establishing that: (1) Neumann is a limited liability company with its principal place of business in New Jersey; (2) ANA is a limited liability company with its principal place of business in Pennsylvania; (3) all Plaintiffs' members are citizens of New Jersey; (4) Defendant is a limited liability company with its principal place of business in Illinois; and (5) Defendant's members reside in the states of Florida and California. (*See* Decl. of Achim Neumann, ECF No. 25; Correspondence from Def., ECF No. 27.) Upon satisfaction of the Order to Show Cause, the Court reinstated Defendant's Motion. (Text Order, ECF No. 28.) Having established that diversity of citizenship exists in this matter, Defendant's facial attack of the FAC pursuant to Rule 12(b)(1) is moot.

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 414 n.9 (1984)).

General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home[ ]' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler*, 571 U.S. at 137). Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Still, the plaintiff must establish "'with reasonable particularity sufficient contacts between the defendant and the forum state'" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)

6

motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (Scirica, J., concurring) (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

## III.   <u>DISCUSSION</u>

Defendant asserts that it is not subject to personal jurisdiction in New Jersey. (Def.'s Moving Br. at 4-8, ECF No. 17-4.) Defendant further maintains that Plaintiffs' FAC should be dismissed under Rule 12(b)(6) because: (1) Plaintiffs' tortious interference claims are time-barred under Pennsylvania's statute of limitations; and (2) the tortious interference claims are inadequately pled. (*Id.* at 12-17.) Because personal jurisdiction is a threshold issue bearing on the judicial power to resolve a suit, the Court addresses whether general or specific jurisdiction exists here. *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) can resolve a case." (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999)).

### A.   **General Jurisdiction**

Defendant argues Plaintiffs failed to plead general jurisdiction in the FAC. (Def.'s Moving Br. at 2 n.1.) Plaintiff counters that general jurisdiction exists because Defendant: (1) holds an active New Jersey real estate license; (2) is registered with the New Jersey Department of Treasurer to do business in New Jersey; and (3) advertises properties for sale in New Jersey on its website.

(Pls.' Opp'n Br. at 7-8.) Defendant responds by contending that: (1) the business entity holding the real estate license and New Jersey business registration to which Plaintiffs are referring is an affiliated, but separate, entity that is not a named defendant in this action; and (2) its website is passive insofar as it does not enable, process, or transact business. (Def.'s Reply Br. at 7-8.)

A plaintiff must demonstrate that a defendant is essentially "at home" in the state in which a lawsuit is filed to establish general jurisdiction over that defendant. *Daimler*, 571 U.S. at 122. "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF*, 581 U.S. at 413 (citing *Daimler*, 571 U.S. at 137); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (same). With respect to subsidiary entities, even if they are considered "at home" in the forum state, the parent entity is not automatically subject to general jurisdiction in the same state. *Daimler*, 571 U.S. at 136-37. Rather, if a subsidiary acts as an "agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction . . . exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (citation modified).

The Court lacks general jurisdiction over Defendant. Neither party disputes that Defendant is an Illinois-based limited liability company, its principal place of business is in Illinois, and its members reside in the states of Florida and California. (*See* Decl. of Achim Neumann ¶¶ 5-7, ECF No. 25; Decl. of Dennis Ruben ¶¶ 3, 6-5, ECF No. 17-3.) There is, moreover, no allegation that Defendant has any employees, real property, or bank accounts in New Jersey. (*See generally* FAC.) With respect to the affiliated entity holding a New Jersey real estate license, Plaintiff makes no allegation that it is the alter-ego of Defendant or that Defendant sufficiently controls the entity such that it renders Defendant at home in New Jersey. *See Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d

455, 470 (2019) ("Under the alter-ego theory, if a subsidiary is 'merely the agent' of its parent corporation or the parent corporation 'controls' the subsidiary, 'then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary.'" (quoting *Shuker*, 885 F.3d at 781)); *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 108 (3d Cir. 2009) (explaining that for personal jurisdiction predicated upon the "agency theory, [a plaintiff] need only make a prima facie showing of the connection between the actions of the agent and the principal." (internal quotation and citation omitted)). Additionally, the mere fact that the affiliated entity is registered and maintains a business address in New Jersey does not necessarily mean that it—or by extension, Defendant—consents to general jurisdiction in this state. *See Simplot India LLC v. Himalaya Food Int'l Ltd.*, No. 23-1612, 2024 WL 1136791, at *9-10 (D.N.J. Mar. 15, 2024) (discussing how New Jersey's business registration statutes "do not explicitly provide that registration constitutes consent to general personal jurisdiction").

And finally, to the extent Defendant maintains a website that advertises properties for sale in New Jersey on its website, without more, it is insufficient to establish general jurisdiction. *See Telebrands Corp. v. Altair Instruments, Inc.*, No. 18-16234, 2019 WL 3804837, at *4 (D.N.J. Aug. 13, 2019) ("Generally speaking, Internet contacts, standing alone, will not constitute the substantial, continuous, and systematic contacts required for general jurisdiction.") (quoting *UHS of Del., Inc. v. United Health Servs., Inc.*, No. 12-485, 2013 WL 12086321, at *8 n.6 (M.D. Pa. Mar. 26, 2013)). Plaintiffs, here, make no allegation that that Defendant's website is so systematically and continuously directed at New Jersey such that it is central to Defendant's business. (*See generally* FAC.) To hold otherwise opens the possibility that any corporation maintaining a website establishes general jurisdiction in every state. *Cf. Molnlycke Health Care*

*AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) (finding that "[t]o hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state."). Plaintiff has thus failed to demonstrate that this Court has general jurisdiction over Defendant.

### B.    Specific Jurisdiction

Defendant next contends that it is not subject to specific jurisdiction in New Jersey because Plaintiffs neither allege that it has conducted business activity in New Jersey related to the transactions at issue nor that Defendant expressly aimed its tortious conduct at New Jersey. (Def.'s Moving Br. at 7-8.) In response, Plaintiffs argue that the contracts with which Defendant interfered were based in New Jersey and subject to New Jersey law, and Defendant had actual knowledge that Rudy entered into these contracts with Plaintiffs. (Pls.' Opp'n Br. at 10-11.) Plaintiffs further submit that Defendant's interference directly usurped Plaintiffs' earned commissions. (*Id.* at 11.)

The Supreme Court has articulated two tests for specific jurisdiction: (1) the "traditional" test—also called the "minimum contacts" or "purposeful availment" test, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *Int'l Shoe Co. v. State of Wash, Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)); and (2) the so-called *Calder* "effects test," *Calder v. Jones*, 465 U.S. 783, 787 n.6 (1984). The traditional test and the *Calder* effects test have distinct requirements, and both should be considered. *See Hasson v. FullStory Inc.*, 114 F.4th 181, 189 (3d Cir. 2024) (explaining that "the effects test . . . require[s] that the tortious actions of the defendant have a forum-directed purpose" whereas "the traditional specific jurisdiction analysis simply requires that the plaintiff's claims arise out of or relate to the defendant's forum contacts" (alterations in original) (citation omitted)).

### 1. The Traditional Test

The traditional test hinges upon a defendant's "minimum contacts" with the forum state and entails a three-step analysis. *O'Connor*, 496 F.3d at 316-17. First, the defendant must have "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987)). This prong requires that the defendant had "minimum contacts with the forum state that show [that] the defendant took a deliberate act reaching out to do business in that state." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citation omitted). Next, the plaintiff must show that its claims "'arise out of or relate to'" at least one of those contacts or activities. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Helicopteros*, 466 U.S. at 414). "For the contacts to satisfy the second prong, there must be a strong relationship among the defendant, the forum, and the litigation." *Hepp*, 14 F.4th at 208 (citation modified). Finally, even when the foregoing two prongs are demonstrated, the Court must ensure that its exercise of personal jurisdiction "'comports with traditional notions of fair play and substantial justice'" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Toys "R" Us*, 318 F.3d at 451 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Taking Plaintiffs' allegations as true, Defendant has taken a deliberate act to do business in the state of New Jersey in some form. (*See* FAC ¶ 7; Decl. of Dennis Ruben ¶ 17 ("NRC currently represents a client who is a seller of two properties in New Jersey which are under executed purchase agreements pending closing.").) Plaintiffs, however, fail to connect their tortious interference claims to Defendant's activities in New Jersey. (*See generally* FAC.)[6] Rather,

---

[6] The Court notes that although Plaintiffs outlined the standard for the traditional test, Plaintiffs make no bona fide argument addressing the traditional test. (*See* Pls.' Opp'n Br. 7-11.)

Plaintiffs' claims are solely premised on the notion that Defendant interfered with a valid contract and Plaintiffs' prospective economic advantage, preventing Plaintiffs from receiving the commission they were contractually entitled to under the Agreements. (*Id.* ¶¶ 27-35.) Because there is no clearly alleged relationship between Defendant, the state, and the suit at bar, *Hepp*, 14 F.4th at 208, the Court cannot exercise personal jurisdiction over Defendant pursuant to the traditional test.

### 2.    The Effects Test

In the case of intentional torts, such as tortious interference, the Court may exercise personal jurisdiction when the *Calder* effects test is met. *See Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 500 (D.N.J. 2017). That test requires a plaintiff to allege:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . .

*Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)).

The "expressly aimed" element must first be met before a court considers the other two elements. *Marten*, 499 F.3d at 297 (citing *IMO Indus.*, 155 F.3d at 266). To meet the test's third prong, it is not sufficient that a plaintiff merely "establish that defendant knew that plaintiff was located in a particular forum." *Cabot Corp. v. Niotan, Inc.*, No. 08-1691, 2011 WL 4625269, at *14 (E.D. Pa. Sep. 30, 2011). The plaintiff must also "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266. Moreover, the focus of the inquiry for the second and third prongs is "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Here, the Court finds that Plaintiffs do not meet their burden in satisfying the "expressly aimed" element. As previously noted, Plaintiffs essentially allege that Defendant intentionally interfered with a valid contract, subject to New Jersey law,[7] or Plaintiffs' prospective economic advantage, causing Plaintiffs to not receive their earned commissions. (FAC ¶¶ 27-35.) There are, however, no allegations that New Jersey was the focal point of Defendant's tortious conduct. That Plaintiffs felt the harm in New Jersey because Plaintiffs are located in this state is not enough to meet this exacting standard. *See IMO Indus., Inc.*, 155 F.3d at 263 ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*."). And the fact that Plaintiffs are New Jersey corporations, (FAC ¶ 5), "does not on its own create jurisdiction over nonresident defendants." *Marten*, 499 F.3d at 298. Plaintiffs have neither alleged that Defendant "knew that [ P]laintiff[s] would suffer the brunt of the harm" in New Jersey nor "point[ed] to specific activity indicating that [ D]efendant expressly aimed its tortious conduct" toward New Jersey. *IMO Indus., Inc.*, 155 F.3d at 266. Because Plaintiffs do not satisfy the *Calder* effects test, specific jurisdiction does not exist.

The Court cannot exercise personal jurisdiction over Defendant, and Plaintiffs' FAC is accordingly dismissed.[8]

### C.  Jurisdictional Discovery

Plaintiffs request that this Court order jurisdictional discovery. (*See* Pls.' Opp'n Br. 2.) The decision to order jurisdictional discovery lies within the Court's discretion. *Compagnie Des*

---

[7] A contractual choice-of-law provision does not, by itself, confer personal jurisdiction. *Burger King*, 471 U.S. at 481-82.

[8] Because the Court holds that it lacks personal jurisdiction over Defendant, it cannot entertain Defendant's Motion to Dismiss under Rule 12(b)(6). *See Lightfoot*, 580 U.S. at 95.

*Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362-63 (3d Cir. 1983). If a plaintiff can present factual allegations suggesting "with reasonable particularity" that the requisite "contacts between [the party] and the forum state" exist, then the plaintiff should be permitted to conduct jurisdictional discovery. *Toys "R" Us*, 318 F.3d at 456 (alteration in original) (citing *Mellon Bank*, 960 F.2d at 1223). As previously discussed, but for the one allegation that Defendant represents a client doing business in New Jersey, Plaintiffs' FAC does not suggest with reasonable particularity the existence of either general or specific personal jurisdiction in this state. Nor does the FAC relate Plaintiffs' tortious interference claims to Defendant's conduct in New Jersey, if any. The Court will therefore not exercise its discretion to order jurisdictional discovery.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: _April 20_ , 2026

14